UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GLEN HARRIS, Individually and P.P.A. | : | NO.: 3:08CV01644-RNC |
| as Guardian for K.H., a minor child | : | |
| | : | |
| v. | : | |
| | : | |
| JOHNMICHAEL O'HARE, | : | |
| ANTHONY PIA, and | : | |
| CITY OF HARTFORD | : | AUGUST 15, 2016 |

## JOINT TRIAL MEMORANDUM

## I.      CERTIFICATION

The undersigned counsel certify that this Joint Trial Memorandum is the product of consultation between the lawyers who will be trying the case.

## II.     TRIAL COUNSEL

### A.     PLAINTIFFS – GLEN HARRIS, INDIVIDUALLY AND P.P.A. AS GUARDIAN FOR K.H., A MINOR CHILD

Jon L. Schoenhorn, Esq. (ct 00119)
Jon L. Schoenhorn and Associates
108 Oak Street
Hartford, CT  06106
Ph:    (860) 278-3500
Fax:   (860) 278-6393
Email: jon@schoenhorn.com

### B.     DEFENDANTS – JOHNMICHAEL O'HARE AND ANTHONY PIA

Thomas R. Gerarde (ct 05640)
Howd & Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT 06114
Ph:    (860) 249-1361
Fax:   (860) 249-7665
Email: tgerarde@hl-law.com

### C. DEFENDANT CITY[1]

Nathalie Feola-Guerrieri
Assistant Corporation Counsel
City of Hartford
550 Main Street
Hartford, CT 06103
(860) 757-9700

## III. JURISDICTION

This action is brought pursuant to Title 42, United States Code §§ 1983 and 1988, and the fourth and fourteenth amendments to the United States Constitution. Jurisdiction is founded upon Title 28, United Stares Code §§ 1331 and 1342 and the aforementioned statutory and constitutional provisions. Plaintiff also invokes the supplemental jurisdiction of this court to hear and determine claims arising under Connecticut state law and its constitution, pursuant to Title 28, United States Code § 1367.

## IV. JURY/NON-JURY

This case is to be tried before a jury.

## V. NATURE OF THE CASE

### A. PLAINTIFFS' DESCRIPTION

This action, brought by a homeowner and his then 12-year-old daughter, arises out of events on December 20, 2006, when the defendant Hartford police officers entered into the plaintiffs' yard on Enfield Street without a warrant and shot and killed the family dog, a three year old Saint Bernard named Seven. The plaintiffs also assert that Seven was a non-aggressive friendly dog and that defendant O'Hare shot him without cause. The defendants earlier received a tip, later proven unfounded, that guns were hidden in an abandoned vehicle in the rear of a home on Enfield Street. No guns were found; and no abandoned vehicle existed. At the time of this incident in 2006, it was known by all reasonably trained police officers that in order to conduct a search for suspected guns, either a warrant signed by a judge or permission of the occupants, was necessary. The defendants had neither. The court has already determined, and you must accept as proven fact, that the entry of these two officers into the plaintiffs' side and rear yard, was illegal, and therefore violated the plaintiffs' constitutional fourth amendment right to privacy. The plaintiffs also claim in this case that the subsequent killing of their pet St. Bernard was an illegal seizure under the Fourth Amendment and a direct result of the illegal entry; that shooting the dog in the yard in front of the child was outrageous conduct that violated the Fourteenth Amendment's guarantee of substantive due process and an intentional infliction of emotional distress; that the defendants'

---

[1] See City's Motion in Limine to Preclude Reference to Plaintiffs' Indemnification Claim.

actions also violated the Connecticut State Constitution, and constituted the torts of trespass and conversion.

The plaintiffs seek monetary and other relief to compensate them for the losses and damages suffered by them.

## B. DEFENDANTS O'HARE AND PIA'S DESCRIPTION

Acting on a tip that there were two handguns in an abandoned vehicle in the backyard of 297 Enfield Street in Hartford, CT, Hartford Police Officers O'Hare and Pia reported to the residence. When they arrived they entered the front yard through an open gate in a chain link fence. They then walked along the side of the three family house that was located on the property, and when they reached the rear corner of the house, peeked around the corner.

They observed a large white and brown dog exiting a hole in a wooden fence located at the southwest corner of the rear yard that began to growl at the officers, "showing its teeth." The large dog then charged toward the officers, growling and barking in an aggressive manner.

The officers began to retreat, running towards the front yard with Officer Pia in front and Officer O'Hare behind, with the large dog directly behind both. The dog continued to charge at the officers, snapping its teeth in an aggressive manner. Officer Pia was able to exit the front yard through the open, unsecured front gate but Officer O'Hare was unable to find an avenue of escape due to the animal's close proximity, and therefore turning around to face the animal while it was still charging at him. Officer O'Hare then drew his department-issued firearm, pointed it in the direction of the charging dog, and yelled "Get back" several times in an attempt to stop the animal's charge. The dog hesitated momentarily and then continued his charge, growling and snapping his teeth, as he approached Officer O'Hare. The dog was approximately three feet away from Officer O'Hare, who had no safe avenue of escape. Fearing the dog had the potential to cause serious physical injury to himself or Officer Pia, Officer O'Hare checked his backdrop and ensured it was clear, not posing a danger to any persons. Officer O'Hare then aimed his department-issued firearm downward at the large dog and fired three rapid gunshots, killing the dog.

## VI. STIPULATIONS OF FACTS AND LAW

### A. PLAINTIFFS' PROPOSED STIPULATIONS

1.   The plaintiff, Glen Harris, and his daughter, K.H., have been, at all times relevant to this complaint, citizens of the United States and residents of the City of Hartford, Connecticut.
2.   This court has personal and subject matter jurisdiction over the plaintiffs and their claims.

3.      During the relevant times in this complaint, the defendants, Johnmichael O'Hare and Anthony Pia, were municipal employees of the City of Hartford, Connecticut, employed as patrol officers for said Town.  At all times relevant hereto, and in all their actions described herein, Defendants O'Hare and Pia were acting individually and jointly with other Hartford police officers not named in this complaint, under color of state law, regulation and/or custom, and under color of their authority as a municipal employees of the City of Hartford, Connecticut.

4.      The defendant City of Hartford is a municipal corporation, incorporated under the laws of the State of Connecticut, with powers to employ police officers.

5.      On December 20, 2006, the minor plaintiff was twelve years old.

6.      On or about December 20, 2006, Defendants O'Hare and Pia entered the plaintiff's yard at 297 Enfield Street in Hartford, Connecticut without a warrant.

7.      While on the plaintiff's property, the defendants encountered the plaintiff's St. Bernard dog.

8.      While on the plaintiff's property, Defendant O'Hare shot the dog three times with his department issued service pistol.

9.      The dog died as a result of the gunshot wounds inflicted by Defendant O'Hare.

10.     The plaintiff mailed a Notice of Intent to Sue to the Town Clerk of the City of Hartford on or about April 9, 2007, and the Town Clerk received the Notice of Intent to Sue on or about April 10, 2007.


## B.  DEFENDANTS O'HARE AND PIA'S PROPOSED STIPULATIONS

1.      The plaintiff, Glen Harris, and his daughter, K.H., have been, at all times relevant to this complaint, citizens of the United States and residents of the City of Hartford, Connecticut.  K.H. is a minor child.

2.      This court has personal and subject matter jurisdiction over the parties and their claims.

3.      On or about the date relevant to this complaint, December 20, 2006, the defendants, Johnmichael O'Hare and Anthony Pia, were municipal employees of the City of Hartford, Connecticut, employed as police officers for the City.

4.      At all times relevant hereto, and in all their actions described herein, Defendants O'Hare and Pia were acting under color of state law, regulation and/or custom, and under color of their authority as a municipal employees of the City of Hartford, Connecticut.

5.      The defendant City of Hartford is a municipal corporation, incorporated under the laws of the State of Connecticut, with powers to employ police officers.

6.      On December 20, 2006, the minor plaintiff K.H. was twelve years old.

4

7.  While on the plaintiffs' property located at 297 Enfield Street in the City of Hartford on or about December 20, 2006, the defendants encountered the plaintiffs' St. Bernard dog.

8.  While on the plaintiffs' property, Defendant O'Hare shot the plaintiffs' St. Bernard dog, with his department issued service pistol.

9.  The plaintiffs' dog died as a result of one or more gunshot wounds inflicted by Defendant O'Hare.

10. The plaintiffs mailed a Notice of Intent to Sue regarding the circumstances of this complaint to the Town Clerk of the City of Hartford on or about April 9, 2007, and the Town Clerk received said Notice of Intent to Sue on or about April 10, 2007.


## VII.    PLAINTIFFS' CONTENTIONS

<u>First Cause of Action: Illegal Search and Seizure under the Fourth Amendment</u>

On December 20, 2006, at approximately 3 p.m., the defendant police officers entered the plaintiff's property without a warrant and with their guns drawn.  Seeking to avoid detection, the defendants stealthily moved across the plaintiff's front yard, then along the side of the house into the rear yard, where the minor plaintiff was outside with her dog.  The defendants and the dog saw each other, and the defendants turned and ran back towards the front yard.  The dog followed the defendants.  Defendant Pia exited the front yard, but defendant O'Hare turned and faced the dog.  Defendant O'Hare then shot and killed the dog.

The plaintiffs contend that the defendants violated the Fourth Amendment's protections against unreasonable searches because the yards surrounding the plaintiff's house constituted curtilage.  Furthermore, the defendants did not have a warrant or a valid exception to the warrant requirement that would grant them the legal right to enter the property.  Finally, the defendants did not have any right to shoot and kill the plaintiffs' dog, therefore, killing the dog constituted an illegal seizure.

<u>Second Cause of Action: Violation of the Fourteenth Amendment's Due Process Clause by Defendant O'Hare</u>

The plaintiff further contends that while the defendants and the dog were moving along one side of the house, the minor plaintiff ran toward the front yard along the opposite side of the house.  The plaintiff heard defendant O'Hare fire two shots before she arrived in the front yard.  When she reached the front yard, she saw her pet dog lying on the ground, still panting and wagging his tail.  She also saw defendant O'Hare standing over her wounded pet, pointing his gun at the dog.  The minor plaintiff screamed "No, don't shoot my dog!"  Defendant O'Hare looked at the minor plaintiff, looked back at the dog, and then fatally shot the dog a third time.  After the minor plaintiff ran to the body of her dog, crying and visibly upset, defendant O'Hare told her, "Sorry, miss, but your dog isn't going to make it."

This conduct violates the Fourteenth Amendment's Due Process Clause which guarantees the right to substantive due process. Defendant O'Hare's action shocks the conscience and offends fundamental democratic notions of fair play and liberty by ruthlessly murdering a family pet in front of a child.

Third Cause of Action: Intentional Infliction of Emotional Distress Against Defendant O'Hare

Defendant O'Hare's conduct as described under the Second Cause of action also forms the basis of a cause of action for intentional infliction of emotional distress.

Fourth Cause of Action: Trespass Claim Against Defendants O'Hare and Pia

The defendants' conduct described in the First Cause of Action also forms the basis for a claim in common law trespass.

Fifth Cause of Action: Conversion Claim Against Defendant O'Hare

The defendants' conduct described in the First and Second Causes of Action also forms the basis for a claim in common law conversion.

Sixth Cause of Action: Indemnification against the City of Hartford

On April 9, 2007, the plaintiffs sent a Notice of Intent to Sue to the Town Clerk of the City of Hartford. Therefore, the City of Hartford is obligated to indemnify the individual defendants under Connecticut General Statutes §§ 1-101a and 7-465.

## VII.   DEFENDANTS O'HARE AND PIA'S CONTENTIONS

On December 20, 2006, two officers of the Hartford police arrested a Mr. Hemmingway at 717 Garden Street with several bags of heroin on his person. Mr. Hemmingway informed the officers that in the rear of 297 Enfield Street there was an abandoned gray vehicle that contained two guns. Hemmingway would not say how he knew about the guns, but stated that they were located in the vehicle.

Hartford Police Officers O'Hare and Pia reported to the residence. When they arrived they entered the front yard through an open gate in a chain link fence. They then walked along the side of the three family house that was located on the property, and when they reached the rear corner of the house, peeked around the corner.

Before entering the back yard they saw the dog, turned around and ran. This area of the yard they entered was not enclosed, and the plaintiffs took no steps whatsoever to protect said area from entry or from view.

There was no fence that enclosed the property, and in fact, the front gate to the chain link fence was left open. Along the edge of the front yard of the property was an approximate 4 foot high chain link fence with multiple openings. The chain link fence had a large opening where the driveway was located. There was also a gate in the

chain link fence leading to the front door, which was left open. Additionally, there was no fence or barrier blocking ones view of or path of travel to either the front yard or backyard. Furthermore, there was a portion of fencing on the side of the property that was knocked down. Finally, there was no fence or barrier separating the front yard from the backyard.

Further, neither the front nor backyard was enclosed by fencing or some other barrier, there was a large opening in the front fence where the driveway was located, and the front gate was left open. There was also no fencing or other barrier separating the front yard from the backyard. Further, there was no stockade or similar type fence in the front yard blocking ones view, but merely a chain link fence that was approximately 4 feet high, which does not block one's view of the yard. Finally, there were no "No trespassing" signs or anything to that effect to keep people out of the property. The defendants acknowledge the court of appeals ruling that their entry into the side yard of the plaintiff without a warrant violated the Fourth Amendment rights of the plaintiff, but contend that said violation of constitutional rights was not reckless or outrageous, and does not warrant an award of punitive damages because the defendants believed they had the right to enter the yard as part of their community caretaking function, to secure two illegal guns which they had probable cause to believe were hidden in the rear yard.

The officers observed the large dog, the dog looked in their direction and began to growl and charge at them. As the officers were running, the large dog was growling, snapping and lunging at O'Hare. The dog was gaining on O'Hare, all the while continuing to snap, lunge and growl at O'Hare in an aggressive manner.

When the dog was only a few feet away from him, O'Hare turned around, faced the dog, began to backpedal and yelled "get back" numerous times in an effort to stop the dog. The dog hesitated for a brief moment and then again began to growl, snap and lunge at O'Hare in an aggressive manner. The dog continued to gain on O'Hare, who determined that the dog was not going to stop and that he could not outrun the dog. Therefore, after making every effort to outrun the dog and get the dog to stop by yelling get back, O'Hare was left with no other choice than to shoot the dog as he believed that it was about to attack him. Officer O'Hare discharged three rapid succession shots into the dog stopping it instantly.

The circumstances regarding the Fourth Amendment claims do not justify an award of punitive damages because the Fourth Amendment violation was not a willful or reckless disregard of constitutional rights. Also, the killing of the dog was reasonable under the circumstances, as it posed an imminent threat to O'Hare. The substantive due process claims fail as the Fourth Amendment is the appropriate remedy and even if it were not, the actions of the officers did not shock the conscience. Also, the officers are entitled to qualified immunity as to all federal claims other than 4TH Amendment claim regarding entry into the Plaintiff's side yard.

The failure to intervene claim fails, as Officer Pia did not have a realistic opportunity to intervene and did not reasonably believe that the plaintiffs' rights were being violated, as the killing of the dog was justified. The Connecticut Constitution claim fails as it is not a recognized claim, and even if were, O'Hare's action of killing the dog was justified, as the dog posed an imminent threat.

The intentional infliction of emotional distress claim fails as there is no right to sue an individual for intentional infliction of emotional distress resulting from the death of a pet, and even if there was, the officers actions were not extreme and outrageous. The trespass claim fails as the officers were performing official duties and therefore licensees. The conversion claim fails as the officers did not exercise an unauthorized dominion over the dog given that their actions were justified. Finally, the negligence claim fails as the officers are entitled to governmental immunity, and the defendants did not breach any duty owed to the plaintiffs.

## IX.    LEGAL ISSUES

### A. PLAINTIFFS' PROPOSED LEGAL ISSUES

A.    Whether the actions of the officers shocked the contemporary conscience?

B.    Whether the officers are entitled to qualified immunity on the substantive due process claim?

C.    Whether Officer Pia had a realistic opportunity to intervene?

D.    Whether Connecticut recognizes a right to sue an individual for intentional or negligent infliction of emotional distress resulting from an injury to property such as a pet?

E.    Whether the officers' actions were extreme and outrageous?

F.    Whether the officers exercised an unauthorized dominion over the dog, amounting to conversion?

G.    Whether the officers were not trespassers, but licensees?

H.    Whether the officers are entitled to governmental immunity?

I.    Whether the officers' actions were reckless?

J.    Whether the defendants acted jointly or conspired with each other?

K.    Whether the defendants violated the plaintiffs' Fourteenth Amendment rights?

L.    Whether the defendants committed the torts of trespass, conversion, and/or intentional infliction of emotional distress?

### B.  DEFENDANTS O'HARE AND PIA'S PROPOSED LEGAL ISSUES

A.    Whether the dog posed an imminent threat to the officers?

B.    Whether the plaintiffs have a viable substantive due process claim?

C.    Whether the actions of the officers shocked the contemporary conscience?

D.    Whether the officer are entitled to qualified immunity on the substantive due process claim?

E.    Whether officer Pia had a realistic opportunity to intervene?

F.    Whether the plaintiff has a viable claim under the Connecticut Constitution?

G.    Whether the officers entry into the property and killing of the dog was justified under the Connecticut Constitution?

H.     Whether the officer are entitled to qualified immunity on the Connecticut Constitution claim?

I.     Whether Connecticut recognizes a right to sue an individual for intentional or negligent infliction of emotional distress resulting from injury to property, such as a pet?

J.     Whether the officers' actions were extreme and outrageous?

K.     Whether the officers were not trespassers, but licensees?

L.     Whether the officers exercised an unauthorized dominion over the dog, amounting to a conversion?

M.     Whether the officers are entitled to governmental immunity?

N.     Whether the plaintiffs have proved their claims of negligence?

O.     Whether the officers actions were reckless?

P.     Whether the defendants acted jointly or conspired with each other?

Q.     Whether the defendants violated the plaintiffs' Fourteenth Amendment rights?

R.     Whether the defendants violated Connecticut Constitution, Art I, Sec. 7?

S.     Whether the defendants committed the torts of trespass, conversion, intentional infliction of emotional distress and/or negligence?

T.     Whether nominal damages should be awarded?

U.     Whether punitive damages should be awarded?

## X.    VOIR DIRE QUESTIONS

The Plaintiffs' Proposed Voir Dire Questions are attached as **Exhibit A**. Defendants O'Hare and Pia's Proposed Voir Dire Questions are attached as **Exhibit B**. The City of Hartford's Proposed Voir Dire Questions are attached as **Exhibit C** (only if the Court does not grant the City of Hartford's Motion in Limine to Preclude Reference to Plaintiffs' Indemnification Claim)

## XI.    WITNESSES

### B.    PLAINTIFFS' PROPOSED WITNESSES

The plaintiffs and defendants could not merge their witness lists because the plaintiffs provided a Word Perfect document, which the defendants were unable to open and merge with their witness list. The defendants object to the following witnesses:

1.    *Glen Harris*, Hartford, CT. The plaintiff will testify regarding the allegations in his complaint. Three hours.

2.    *K. Harris*, Hartford, CT. The plaintiff will testify regarding the allegations in her complaint. Two hours.

3. **Tashona Ayers**, Hartford, CT. Ms. Ayers is K. Harris's stepmother and will testify about some of the events alleged in the complaint, including the emotional state of the minor plaintiff.  Two hours.

4. **Dorothy White**, Hartford, CT. Ms. White is the grandmother of K. Harris. She regularly visited K. Harris and can testify to the emotional impact this incident had on K. Harris including on December 20, 2006. One hour.

5. **George Hemingway**, DOC.  The plaintiffs may call Mr. Hemingway regarding interactions with the defendants.  One hour.

6. **Victor Rivera,** Hartford, CT.  Will testify as to his interactions with one of the defendants and with other police officers on the day of the incident. One hour.
   a. **OBJECTION**:  Irrelevant.

7. **Lisa Wexler**, New Haven, CT.  She is an expert that will testify in conformity with her expert disclosure and her recent deposition. One hour.

8. **Richard French, DVM, PhD**, Leicester, MA.  Dr. French performed the veterinary autopsy on the plaintiffs' dog and is likely to have information regarding the cause of death and the dog's general health at the time of death. One hour.

8a. **Records Keeper for CT DVM**, Storrs, CT.  The plaintiffs anticipate stipulation regarding the necropsy and reports created as a result thereof.

9. **Nancy A. Eiswirth, Ph. D.**, Hartford, CT.  Dr. Eiswirth evaluated and treated the minor plaintiff for mental distress after the defendants' encounter with the minor plaintiff.  Dr. Eiswirth will offer both factual and expert testimony regarding the emotional distress suffered by the plaintiff, including the need for subsequent mental health treatment caused by the defendants' conduct.   She has more recently seen the plaintiff and will testify that she still suffers from the emotional effects of the shooting.  Dr. Eiswirth will also explain the diagnosis of Post Traumatic Stress Syndrome.  She will offer an expert opinion regarding the child's emotional condition and diagnosis of post traumatic stress syndrome as being proximately caused by the defendants' conduct, including her subsequent psychiatric hospitalization and outpatient care. 2 hours.

10. **Recordskeeper, WFSB-TV (or designee)**, Rocky Hill. CT. A representative of WFSB-TV may be called to authenticate news footage of the scene as it was recorded on December 20, 2006, unless stipulation reached. Half hour.
    a. **OBJECTION**:  Irrelevant.

11. **Recordskeeper,** Hartford Police Department. A representative of the communications division of the HPD may be called to authenticate radio communications from the defendants and various officers who were at or called to 297 Enfield Street, Hartford on December 20, 2006 and to explain how transmissions are captured and recorded. Half hour

12. **Gabriel Laureano**, Hartford Police Department, Hartford, CT. Sgt. Laureano may testify about his interactions with a suspect named George Hemingway prior to the defendants' arrival at 297 Enfield Street, and his communications with the defendants. He will also testify as to his observations at 297 Enfield Street that day as well as his whereabouts and interactions with the defendants prior to the incident. Sgt. Laureano is expected to testify that he did not tell either of the defendants that he had reason to believe that some type of illegal transaction between individuals was about to occur or was occurring on December 20, 2006 at plaintiffs' property at 297 Enfield Street. Said testimony will also be used in anticipated impeachment of contrary claims by the defendants about what Laureano told them, unless defendants' testimony is barred. One hour.

13. **Shawn St. John**, Hartford Police Department. Sgt. St. John is expected to testify to his observations as the defendants' supervisor on December 20, 2006 on Enfield Street on the date of the incident, and to statements made by the defendants and his interactions with the defendants both prior to and after the incident. One hour.
    a. **OBJECTION**: Irrelevant.

14. **Ramon Baez Sr. and/or Carlos Ocasio**, Hartford Police Department. One or both of these police detectives will testify to their observations at the scene on the date of the incident, and to their retrieval and recovery of certain items from 297 Enfield Street relevant to the investigation. Half hour (each).

15. **Dominic Agostino**, Hartford Police Department. Officer Agostino will testify regarding his dispatch to Enfield Street on the date of the incident, to his observations at the plaintiffs' property, and to statements made by the defendants. One hour.

16. **Paul Cicero**, Hartford Police Department. Detective Cicero will testify as to the condition and/or state of Defendants O'Hare and Pia prior to the shooting incident in question. Thirty minutes.
    a. **OBJECTION**: Irrelevant.

17. **Quang Tran**, Hartford Police Department. Officer Tran will provide impeachment testimony in regards to prior testimony by Defendant O'Hare. Fifteen minutes.

a. ***OBJECTION***:  Irrelevant.

18.    ***L. Poma***, Hartford Police Department. Officer Poma will testify about his interaction with Defendants O'Hare and Pia during the time period immediately prior to the incident in question. Thirty minutes.
   a. ***OBJECTION***:  Irrelevant.

19.    ***Omayra Martinez-Baidy***, Hartford Police Department.  Detective Martinez-Baidy is a recordskeeper for Hartford Police Department records and reports. Thirty Minutes.
   a. ***OBJECTION***:  Irrelevant.

20.    ***Recordkeepers for various medical providers who treated K.H.***, unless authenticity as business and/or hospital records is stipulated. Ten minutes for each.

21.    ***Recordskeeper, Children's Medical Center and Institute of Living***, half hour.

22.    ***Recordskeeper, St. Francis Hospital, Emergency Room Records***, half hour.

**C.    DEFENDANTS O'HARE AND PIA'S PROPOSED WITNESSES**
   1.    ***Glen Harris***, 297 Enfield Street, Hartford, CT 06112.  The plaintiff will testify regarding the allegations in his complaint, including the facts, his home ownership, his daughter's medical treatment and claimed injuries, and damages suffered.  It is anticipated that his testimony will last between two to three hours.
   2.    ***K. H., daughter of Glen Harris***, 297 Enfield Street, Hartford, CT 06112.  The plaintiff will testify regarding the allegations in her complaint, including the facts contained in the complaint, their impact on her, and damages suffered.  It is anticipated that her testimony will take approximately two to three hours.
   3.    ***Tashona Ayers***, 297 Enfield Street, Hartford, CT.  Ms. Ayers is a resident of 297 Enfield Street and will testify about some of the events that occurred as described in the complaint, having been present at the location on December 20, 2006, including its effect on the emotional state of the minor plaintiff that day and subsequently. Two hours.
   4.    ***John Michael O'Hare***, 50 Jennings Road, Hartford, CT  06102.  It is anticipated that he will testify about the information he had about there being two handguns in an abandoned vehicle in the rear of the plaintiffs' property, his entry into the property, the events that led to the killing of the dog and his other actions and observations on the night of the subject incident.  It is anticipated that his testimony will last between one to two hours.

5. **Anthony Pia**, 50 Jennings Road, Hartford, CT 06102. It is anticipated that he will testify about the information he had about there being two handguns in an abandoned vehicle in the rear of the plaintiffs' property, his entry into the property, the events that led to the killing of the dog and his other actions and observations on the night of the subject incident. It is anticipated that his testimony will last between one to two hours.

6. **Gabe Laureano**, 50 Jennings Road, Hartford, CT 06102. It is anticipated that he will testify about the information he had about there being two handguns in an abandoned vehicle and his other actions and observations on the night of the subject incident. It is anticipated that his testimony will last between one to two hours.

7. **Nancy A. Eiswirth, Ph. D.**, 664 Prospect Avenue, Hartford, CT. Dr. Eiswirth evaluated and treated the minor plaintiff for mental distress before and after the defendants' encounter with the plaintiff on December 20, 2006, will offer both factual and expert testimony regarding the emotion distress suffered by the plaintiff, including the need for subsequent mental health treatment, before and after the subject incident. She will also offer an expert opinion regarding the child's emotional condition and diagnosis of post-traumatic stress syndrome as being proximately caused by the defendants' conduct, including her subsequent psychiatric hospitalization and outpatient care, and any pre-existing conditions she had. It is anticipated that her testimony will last between two to three hours.

8. **Recordskeeper, Hartford Police Department**. A representative of the communications division of the HPD may be called to authenticate radio communications from the defendants and various officers who were at or called to 297 Enfield Street, Hartford on December 20, 2006.

9. **George Hemingway**, DOC. It is anticipated that Mr. Hemingway will testify as to the information he provided to the officers on the date of the incident. It is anticipated that his testimony will last between one to two hours.

10. **Sgt. Shawn St. John**, Hartford Police Department. Sgt. St. John is expected to testify to his observations on Enfield Street on the date of the incident, and to statements made by the defendants.

11. **Ramon Baez Sr. and/or Carlos Ocasio**, Hartford Police Department. One or both of these police detectives will testify to their observations at the scene on the date of the incident, and to their retrieval and recovery of certain items relevant to the investigation.

12. **Officer Agostino**, Hartford Police Department. Officer Agostino will testify regarding his dispatch to Enfield Street on the date of the incident, to his observations at the plaintiffs' property, and to statements made by the defendants.

13. **Recordskeeper, Children's Medical Center**.

14. **Joseph J. Stine**, Expert Witness. Mr. Stine will testify that the officers did not act in reckless disregard of constitutional rights when they entered

the property; did not violate constitutional rights when deadly force was used on the plaintiffs' dog by defendant O'Hare; and rebut the opinions of the plaintiffs' law enforcement expert.


## XII.    EXHIBITS

### D.    PLAINTIFFS' EXHIBITS

1.      Photo of Front Yard 1 (SJ-5)
2.      Photo of Front Yard 2 (SJ-8)
3.      Photo of Rear Yard (SJ-6)
4.      Photo of Side of House (001_11.JPG)
5.      Aerial View of 297 Enfield Street (harris-1.jpg)
6.      Photo of two Dogs (001_1.JPG)
7.      Bill of Sale to plaintiff for St. Bernard puppy
8.      Photo of Seven's Body at scene (img056.jpg)
9.      Photo of "Seven" - two dogs (006_6.jpg)
10.     Photo of "Seven" alone (005-5.jpg)
11.     HPD Radio broadcasts from 12-20-06 with transcript
12.     WFSB-TV news footage of scene
        a. ***OBJECTION***:  Irrelevant.  See Motion in Limine.
13.     HPD Photo of evidence markers. (Wide).
14.     HPD Photo of Evidence Marker 1.
15.     HPD Photo of Evidence Marker 2.
16.     HPD Photo of Dog. (Wide)
17.     HPD Photo of Dog. (Close up)
18a.    HPD Photo of front yard (img053.jpg)
18b.    HPD Photo of front of house with driveway (img054.jpg)
18c.    HPD Photo of front of house with both sides (img055.jpg)
18d.    HPD Photo of front of house with "Seven" (img056.jpg)
19.     Photo of O'Hare's Smith & Wesson (img052.jpg)
20.     HPD Use of Force Report
21.     HPD Supplemental Report by Agostino
22.     HPD Interdepartmental Memo by St. John
23.     Animal Control Report by Officer Cloutier
24.     Picture of dead St. Bernard (harrisdogpicture.jpg)
25.     X-rays taken by veterinary center.
26.     Redacted version of Necropsy Report - CT Vet Medicine Diagnostic Laboratory, UConn
27.     MacDonald Vet Hospital cremation bill
28.     K. Harris medical records and bills:
        a.      CT Children's Medical Center
        b.      Hartford Hospital

        c.     Institute of Living

        d.     Wheeler Clinic

        e.     Dr. Nancy Eisworth, PhD (NAE Associates)

        f.     AMR Ambulance

        g.     Summary Exhibit with bill total

29.    Hartford Police Department supplemental incident report

30.    Notice of Intent to Sue City of Hartford by plaintiff
        a.  ***OBJECTION***:  Irrelevant and prejudicial.

31.    Certified mail receipt re: notice of intent to sue[2]

32.    CV of Dr. Nancy Eiswirth[3]
        a.  ***OBJECTION***:  Irrelevant.  See Motion in Limine.

33.    Excerpts from Deposition of O'Hare (see listing below)

34.    Excerpts from Deposition of Pia (see listing below)

35.    Incident Supplement for case number 06-54766 by L. Poma
        a.  ***OBJECTION***:  Irrelevant.

36.    Incident Supplement for case number 06-54766 by O'Hare
        a.  ***OBJECTION***:  Irrelevant.

37.    Incident Supplement for case number 06-54766 by Pia
        a.  ***OBJECTION***:  Irrelevant.

38.    Incident Report for case number 06-54766 by Paul Cicero
        a.  ***OBJECTION***:  Irrelevant.

39.    Incident Report for case number 06-52496 by Quang Tran
        a.  ***OBJECTION***:  Irrelevant.

40.    HPD Use of Less-Lethal Force Report for case number 06-54766
        a.  ***OBJECTION***:  Irrelevant.

41.    "Hartbeat" (CAD) reports generated on December 20, 2006
        a.  ***OBJECTION***:  Irrelevant.

42.    Photograph of Victor Rivera
        a.  ***OBJECTION***:  Irrelevant.

43.    St. Francis Hospital records for Defendant O'Hare for date of treatment December 20, 2006

44.    Map of North End of Hartford, CT

45.    Map of Streets in North End of Hartford, CT


**B**   **DEFENDANTS O'HARE AND PIA'S EXHIBITS**

| Photo of Plaintiff's Two dogs | 1 |
| --- | --- |
| | |
| Photograph of North Side of 297 Enfield Street, Hartford, CT | 2 |
| | |
| Photograph of North Side of 297 Enfield Street, Hartford, CT | 3 |

---

[2] The City objects to the introduction of this exhibit to the Jury, but has no objection to the exhibits to the Court.

[3] The City objects to the introduction of this exhibit to the Jury, but has no objection to the exhibits to the Court.

| | |
|---|---|
| Photograph of North Side of 297 Enfield Street, Hartford, CT | 4 |
| Photograph of North Side of 297 Enfield Street, Hartford, CT | 5 |
| Two Photographs of Front Yard of 297 Enfield Street, Hartford, CT | 6 |
| Two Photographs of Backyard of 297 Enfield Street, Hartford, CT | 7 |
| Photograph of Driveway of 297 Enfield Street, Hartford, CT | 8 |
| Photograph of Front of 297 Enfield Street, Hartford, CT | 9 |
| Photograph of Backyard of 297 Enfield Street, Hartford, CT | 10 |
| Two Photographs of Driveway of 297 Enfield Street, Hartford, CT | 11 |
| Two Photographs of Front and Side Yard of 297 Enfield Street, Hartford, CT | 12 |
| Road diagram in area of 297 Enfield Street, Hartford, CT | 13 |
| Road diagram in area of 717 Garden Street, Hartford, CT | 14 |
| Aerial Photo 1 | 15 |
| Aerial Photo 2 | 16 |
| Aerial Photo 3 | 17 |
| Aerial Photo 4 | 18 |
| Two Photographs of Plaintiffs' Dog After Shooting | 19 |
| Two Photos of Scene of Shooting | 20 |
| K.H.'s Records From Connecticut Children's Medical Center – 10/03/08 | 21 |
| K.H.'s Records From Hartford Hospital – 10/03/08 | 22 |
| K.H.'s Records From The Institute of Living – 10/03/08 thru 10/07/08 | 23 |
| K.H.'s Records From Wheeler Clinic – 10/07/08 thru 10/27/08 | 24 |
| K.H.'s Records From The Institute of Living – 10/20/08 thru 12/11/08 | 25 |
| K.H.'s Records From Nancy Eisworth – January thru February 2007 | 26 |
| Aerial Photo 5 | 27 |

| | |
|---|---|
| Aerial Photo 6 | 28 |
| | |
| Aerial Photo 7 | 29 |
| | |
| Aerial Photo 8 | 30 |

## XIII.   DEPOSITION TESTIMONY

The plaintiffs intend to offer the following portions of the defendants' depositions:

*Defendant Pia*:

| **Page** | **Lines** | |
|---|---|---|
| 26 | 5-25 | |
| 27 | 6-12 | |
| 40 | 3-4 | |
| 50 | 21-25 | |
| 58 | 1-4 | |
| 72 | | 22-25 |
| 73 | 1-25 | |
| 74 | 1-21 | |
| 75 | 14-25 | |
| 76 | 1 | |

*Defendant O'Hare*:

| **Page** | **Lines** |
|---|---|
| 69 | 3-8 |
| 72 | 24-25 |
| 73 | 1-16 |
| 88 | 23-25 |
| 89 | 1-3 |
| 92 | 17-25 |

The plaintiffs object to the introduction of any portions of the defendants' own depositions as hearsay, improper lay opinion testimony and/or irrelevant unless required under the rule of completeness. See, Fed. R. Evid. 403, 701, and 801 to 802.

The defendants' cross designations are as follows:

*Defendant Pia*:

| **Page** | **Line** |
|----------|----------|
| 27       | 13-15    |
| 76       | 2-25     |

*Defendant O'Hare:*

| **Page** | **Line** |
|----------|----------|
| 73       | 17-25    |
| 88       | 23-25    |
| 92       | 15-16    |

## XIV.  JURY INSTRUCTIONS

See O'Hare and Pia's proposed jury instructions attached as **Exhibit D.**  See Plaintiffs' proposed jury instructions attached as **Exhibit E.**  See City's Objection to Plaintiffs' Proposed Jury Instructions and Interrogatories attached as **Exhibit F**.

## XV.  ANTICIPATED EVIDENTARY PROBLEMS

See Pia and O'Hare's Motion in Limine attached as Exhibit G.  Due to a renumbering of exhibits, a supplemental motion may need to  be filed to reference the correct exhibit number as to each piece of challenged evidence.  See Plaintiffs' Motions in Limine attached as Exhibit H.  See City's Motion in Limine to Preclude Reference to Plaintiffs' Indemnification Claim and Objection to Plaintiffs' Proposed Jury Instructions and Interrogatories attached hereto as Exhibit I.

Plaintiffs do not believe that the defendants are not entitled to have each element of each count set forth as a separate interrogatory before a verdict on any one count rendered.  The plaintiffs claim that such a task would make it overly complicated for the jury and unfair to the plaintiffs.

## XVI.   VERDICT FORM

Plaintiffs do not believe that the defendants are not entitled to have each element of each count set forth as a separate interrogatory before a verdict on any one count is rendered.  The plaintiffs claim that such a task would make it overly complicated for the jury and unfair to plaintiffs.

The defendants O'Hare and Pia request the same jury interrogatories that were used at the first trial, with the deletion of the Fourth Amendment entry issue.  See O'Hare and Pia's proposed verdict form attached as **Exhibit J.**  See Plaintiffs' proposed verdict form attached as **Exhibit K.**

## XVII.  TRIAL TIME

The parties estimate that trial will take approximately 5-6 days.

## XVIII.  FURTHER PROCEEDINGS

### PLAINTIFFS' IDENTIFICATION OF FURTHER PROCEEDINGS

As of the drafting of this Joint Trial Memorandum, a Motion for Prejudgment Remedy was filed in December, 2015 and argued on June 30, 2016 before Magistrate Martinez but the plaintiffs are still awaiting a decision.

The plaintiffs need a court order directing St. Francis Hospital to release Defendant O'Hare's medical records for December 20, 2006.

The plaintiffs also anticipate a potential motion and hearing regarding a conflict of interest between the defendant officers and their counsel resulting from counsel's potential change in position relative to indemnification and compensation.

The  plaintiffs require a hearing, as soon as possible, relative to their motion in limine regarding the defendants' expert witness (Stine) and the continued insistence, despite the Second Circuit holding, on arguing exigent circumstances and the community caretaking function.

### DEFENDANTS O'HARE AND PIA'S RESPONSE TO PLAINTIFFS' IDENTIFICATION OF FURTHER PROCEEDINGS

1.      The defendant officers' counsel has no conflict of interest in continued representation of the defendant officers and will address any motions as they arise.

2.      The Plaintiff seeks a hearing to limit the testimony of the Defendants expert Joseph Stine regarding the shell casings that ejected from Defendant O'Hare's gun when he fired 3 times at the Plaintiff's dog.  No hearing is necessary on this issue.  The Defendant will elicit proper foundation for this testimony at trial, and if the Court determines that the proper foundation is not present then the questioning can be restricted accordingly.  If necessary an offer of proof can be made on this issue outside

the presence of the jury. The expert is from Philadelphia and the Defendants would be prejudiced if they were required to bring him to CT for a pretrial hearing on this issue, and then bring him back for testimony at trial.

3.       The defendants do not seek to argue exigent circumstances or community caretaking function as a defense to the 4th Amendment search claim, the Second Circuit opinion has already ordered that judgment enter in favor of the Plaintiff on that issue. However, the Plaintiff is seeking punitive damages for the same entry which now makes live the issue of whether the entry into the Plaintiffs side yard constituted a willful or reckless disregard of the Plaintiffs constitutional rights. Thus, on the issue of recklessness, that state of the as to exceptions to the warrant requirement and curtilage is relevant. The Defendants are being sued personally and Plaintiffs have sought an attachment of their assets. They have the right to make the argument that although the entry into the side yard has been determined to be unreasonable, it does not rise to the level of recklessness. It is not disputed by any party that reckless disregard of constitutional rights is a higher degree of culpability that the reasonableness standard contained in the 4 th Amendment. The Plaintiff has disclosed an expert witness who will testify on this very issue—and will assert that the actions of the officers were in reckless both with respect to the entry into the yard and the shooting of the Plaintiff's dog. The Court of Appeals did not address punitive damages one way or the other. So long as Plaintiff is claiming punitive damages, the Defendant officers should have the right to defend against that claim be demonstrating that their actions were not reckless.

4.       The Plaintiff has filed four additional Motions in Limine regarding evidentiary issues that are not legally complicated. The Defendant believes the court can rule on them as trial progresses. However, the Defendant will file brief responses to each within the next 24 hours.


## XIX.   MAGISTRATE JUDGE

The parties do not consent to a trial by a magistrate.

DEFENDANTS,
JOHNMICHAEL O'HARE
and ANTHONY PIA


By   /s/ Thomas R. Gerarde
    Thomas R. Gerarde  (ct05640)
    Howd & Ludorf, LLC
    65 Wethersfield Avenue
    Hartford, CT  06114-11921
    Ph:   (860) 249-1361
    Fax: (860) 249-7665
    E-mail: tgerarde@hl-law.com


PLAINTIFF,
GLEN HARRIS, Individually and P.P.A.
K.H., a minor child

By   /s/ Jon L. Schoenhorn
    Jon L. Schoenhorn, Esq.  (ct 00119)
    Jon L. Schoenhorn and Associates
    108 Oak Street
    Hartford, CT  06106
    Ph:  (860) 278-3500
    Fax:  (860) 278-6393
    E-mail:  jon@schoenhorn.com

## CERTIFICATION

This is to certify that on **August 15, 2016**, a copy of the foregoing **Joint Trial Memorandum** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Jon L. Schoenhorn, Esq.
Jon L. Schoenhorn & Associates, LLC
108 Oak Street
Hartford, CT 06106-1514

Nathalie Feola-Guerrieri, Esq.
Assistant Corporation Counsel
City of Hartford
550 Main Street
Hartford, CT 06103

/s/ Thomas R. Gerarde
Thomas R. Gerarde